NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| MANHATTAN ASSOCIATES, INC., | : | |
| Plaintiff, | : | Civ. No. 05-3928 (GEB) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| ROBERT G. RUDERMAN, | : | |
| Defendant. | : | |
| | : | |

**BROWN, District Judge**

    This matter comes before the Court upon Plaintiff's motion for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. The parties have extensively briefed the matter, and a preliminary injunction hearing was held on September 6, 2005. Having considered the parties' written submissions and the evidence presented at the hearing, and for the reasons set forth below, the Court will grant Plaintiff's motion.

**I.    PROCEDURAL HISTORY**

    On August 9, 2005, Plaintiff Manhattan Associates ("Manhattan") filed this action against Defendant Robert G. Ruderman ("Defendant"), a former employee of Manhattan. Manhattan alleges that Defendant breached a non-compete agreement and employment agreement by leaving the company and accepting employment with RedPrairie, a direct competitor of Manhattan. In Count One of the Verified Complaint, Manhattan seeks injunctive relief to enjoin Defendant from working at RedPrairie. In Counts Two and Three, Manhattan asserts breach of contract claims pursuant to the two agreements.

On August 11, 2005, Plaintiff filed an application for an order to show cause and temporary restraining order. Manhattan sought to enjoin Defendant from beginning employment with RedPrairie based on his alleged breach of the agreements. Defendant filed an opposition brief on August 25, 2005. A teleconference was held on August 26, 2005. On that day, the Court entered a temporary restraining order enjoining Defendant from engaging in any conduct that violates the non-compete and employment agreements. On August 31, 2005, the parties filed additional briefs in support of their positions. A preliminary injunction hearing was held on September 6, 2005. At the close of argument, the Court informed the parties that the temporary restraining order would remain in effect until the Court rendered a decision in the instant motion for a preliminary injunction.

**II.     PRELIMINARY FINDINGS OF FACT**

Manhattan is a corporation engaged in the business of licensing software applications, including warehouse management software, to various markets. (Mitchell Aff. ¶ 2). Defendant was employed by Manhattan as a sales representative. As a Manhattan employee, Defendant was responsible for selling software applications to licensees. He primarily sold warehouse management software ("WMS") products, but also sold labor management software. (Ruderman Aff. ¶ 16). Defendant's compensation consisted of a base salary of $95,000 and commissions earned from his sales. (Mitchell Aff. ¶ 4). As a sales representative for Manhattan, Defendant created and developed relationships with several of Manhattan's customers. Defendant was also responsible for maintaining customer satisfaction even after the sale of a product.

In January 2003, Manhattan informed its employees of the Fiscal Year 2003 Sales Compensation Plan. (Ruderman Aff. ¶ 6). Under the terms and conditions of the plan, which was

signed by Defendant, an employee must execute a current non-compete agreement and employment agreement to receive his earned commissions. (Mitchell Test. Sept. 6, 2005). The original non-compete agreement given to the Manhattan employees contained, among other things, a twelve-month post-employment restriction period and a list of companies identified as Manhattan competitors. Initially, Defendant objected to the terms of the non-compete agreement, and relayed his objections to Jeff Mitchell, Manhattan's Executive Vice President. Defendant objected to the twelve-month limitation period, as well as the companies listed in Schedule A. (Mitchell Aff. ¶¶ 7-8; Ruderman Aff. ¶ 9). In an email addressed to Mitchell, Defendant requested that Manhattan eliminate nine companies in Schedule A. (Mitchell Aff., Ex. A). Notably, RedPrairie was not one of those companies.

    Ultimately, Manhattan agreed to some of Defendant's requests, and he signed the non-compete agreement on October 24, 2003. The agreement provided that Defendant would refrain from performing his "duties" with one of the competitors listed in Schedule A of the agreement during a six-month period following termination of employment with Manhattan. On December 3, 2003, Defendant also signed an employment agreement, which generally provided that he would not disclose proprietary or confidential information, including trade secrets, to Manhattan's competitors after termination of employment. On July 29, 2005, Defendant informed Manhattan that he was leaving the company. Manhattan discovered that Defendant accepted employment with RedPrairie, one of Manhattan's competitors listed in Schedule A of the non-compete agreement. (Waltz Aff. ¶ 5). The instant lawsuit ensued.

### III. CONCLUSIONS OF LAW AND FURTHER FINDINGS OF FACT PURSUANT THERETO

#### A. Standard for Preliminary Injunction

The "grant of injunctive relief is an extraordinary remedy which should be granted only in limited circumstances." *Frank's GMC Truck Ctr., Inc. v. General Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988). *See also E.B. v. Poritz*, 914 F. Supp. 85, 90 (D.N.J. 1996) (noting "[t]here is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or more dangerous in a doubtful case, than the issuing [of] an injunction."), *rev'd on other grounds*, 119 F.3d 1077 (3d Cir. 1997). The Court must consider four factors in determining whether to grant a motion for a preliminary injunction:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

*Gerardi v. Pelullo,* 16 F.3d 1363, 1373 (3d Cir. 1994) (citations omitted). An injunction should only be issued if Plaintiff produces sufficient evidence to convince the Court that all four factors warrant injunctive relief. *Am. Tel. & Tel. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994). The Third Circuit has placed particular weight on the first two prongs of the four-part test. *Hoxworth v. Blinder, Robinson & Co., Inc.,* 903 F.2d 186, 197 (3d Cir. 1990).

#### B. Likelihood of Success on the Merits

##### i. Non-Compete Agreement – Validity and Enforceability

The Court will first address the non-compete agreement executed by the parties on October

4

23, 2003.[1] Defendant raises several arguments challenging the validity and enforceability of this agreement. He asserts that the agreement is unenforceable because: 1) he was coerced into signing the agreement; 2) the agreement was superceded by the December 3, 2003 employment agreement; and 3) the agreement lacks a geographical limitation. The Court will address each argument in turn.

First, Defendant argues that Manhattan coerced him into executing the non-compete agreement by withholding earned commissions until he agreed to sign the agreement. The record reflects, however, and this Court finds that the agreement was the product of negotiations between both Manhattan and Defendant, rather than a product of coercion. (Mitchell Aff. ¶¶ 7-8). The evidence demonstrates, and this Court finds, that Mitchell and Defendant negotiated the terms of the agreement months before Defendant signed it. (*Id.*). Manhattan produced an email from Defendant to Mitchell dated May, 15, 2003, in which he stated:

> Jeff, Thank you for reaching out to me. You were sincere and it was appreciated very much. I would like to continue to be open and honest with you, and keep our lines of communication open. In the spirit in which you offered to reduce the limitation period to 6 months, I would like to simplify this and resolve. Below are the few requests I have in order to feel comfortable enough to sign the non-compete.

(Mitchell Aff., Ex. A). Defendant proceeded to list his requested changes to the agreement, including the elimination of certain companies from Schedule A. Defendant's email evinces his willingness to execute the agreement, as long as Manhattan adopted certain modifications. This belies Defendant's claim that he was coerced into signing the agreement, and this Court finds that he was not.

---

[1] Pursuant to the non-compete and employment agreements, New York law applies. (V. Compl., Ex. A, ¶ 3; Ex. B, ¶ 10). The parties do not dispute this issue.

Defendant further contends that he was forced into signing the non-compete agreement because Manhattan began withholding commissions. The record, however, supports the contrary, and this Court so finds. In particular, Defendant signed Manhattan's 2003 Sales Compensation Plan which provided that commissions would not be paid until the employee executed a current non-compete agreement with Manhattan. (Pl.'s Ex. List, Ex. 17). Despite this prerequisite, Mitchell overrode the policy three times, allowing Defendant to be paid his earned commissions even though a current non-compete agreement was not in place. (*Id.*, Exs. 1-4) (receiving payment without a signed non-compete agreement on 6/15/2003 and 7/31/2003). Defendant fails to demonstrate any unlawful withholding of commissions on the part of Manhattan. Consequently, the Court rejects Defendant's argument that the non-compete agreement is unenforceable based on coercion.

Second, Defendant contends that the non-compete agreement is unenforceable because it is superceded by the employment agreement. Under New York Law, "'the prior agreements or understandings' referred to in the merger clause are only those 'prior agreements or understandings' that a party would be precluded from proving by operation of the parol evidence rule." *Exhibitgroup/Giltspur, Inc. v. Spoon Ex. Servs.*, 273 A.D.2d 874 (N.Y. App. Div. 2000) (citations omitted). Generally, merger clauses do not apply to separate prior integrated writings that are "independently provable notwithstanding the parol evidence rule." *Id.* at 874. Based on the record, the Court finds that the non-compete agreement was not part of the negotiations leading up to the execution of the employment agreement, but was a separately negotiated independent writing. Defendant fails to convince this Court that the merger clause in the employment agreement supercedes the non-compete agreement. Accordingly, this argument likewise fails.

Third, Defendant argues that the non-compete agreement cannot be enforced because it lacks

a geographic restriction. In determining whether the non-compete agreement is enforceable, the Court must first determine its reasonableness "which hinges on the facts of each case." *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 70 (2d Cir. 1999). Contrary to Defendant's assertion, a lack of a geographic limitation is not *per se* unreasonable. See *Ivy Mar Co., Inc. v. C.R. Seasons Ltd.*, 907 F. Supp. 547, 559 (E.D.N.Y. 1995) (noting that covenants of unlimited or broad geographic scope have been upheld where restrictions were reasonable in light of the particular facts). Thus, the reasonableness of the duration and scope of the agreement must be analyzed in view of the specific facts presented in each case. *Id.* Once a covenant is deemed reasonable, it may be enforced "to the extent necessary (1) to prevent an employee's solicitation or disclosure of trade secrets, (2) to prevent an employee's release of confidential information regarding the employer's customers, or (3) in those cases where the employee's services to the employer are deemed special or unique." *Ticor*, 173 F.3d at 70.

In the present case, the Court finds the non-compete agreement reasonable in both time and scope. The limitation period is six months, as opposed to the originally proposed period of twelve months. Notably, this represents the fruit of negotiations that transpired between Defendant and Manhattan. (*See e.g.,* Mitchell Aff., Ex. A). Additionally, the agreement is also reasonable in geographic scope. Although the agreement may not specify certain states or regions in the country as geographical restrictions, it does include a list fifty-two potential employers. Significantly, the list of competitors originally included six more employers, but was reduced after Defendant successfully negotiated with Manhattan.

Defendant overstates this aspect of the agreement by suggesting that its geographic scope essentially covers the entire United States and twenty-nine foreign countries. (Def.'s Supp. Br. at

7

1).  The Court finds this to be a mischaracterization of the terms of the agreement.  Defendant is not precluded from seeking employment in the United States and twenty-nine foreign countries.  He is at liberty to seek employment globally.  Moreover, the terms of the agreement do not even preclude him from seeking employment with the fifty-two listed companies.  Rather, Defendant is only prevented from performing the "duties" he performed at Manhattan with the listed competitors.  The Court finds this to be reasonable, particularly in light of the circumstances surrounding the execution of the non-compete agreement and the negotiations that took place between the parties.  With regard to the next phase of the analysis, Manhattan successfully demonstrates that the enforcement of the non-compete agreement is necessary to prevent release of confidential information.  Manhattan proffered evidence, which this Court accepts, that Defendant is in possession of sensitive information as a result of his direct contact with approximately 100 potential and actual customers of Manhattan's products, and his involvement with developing marketing and selling strategies to prospective licensees.  (Waltz Aff. ¶ 4; Mitchell Aff. ¶ 5).  Based upon the record, this Court further finds that Defendant has knowledge of competitive strategies that are geared toward companies who compete with Manhattan, such as RedPrairie.  (Waltz Aff. ¶ 4).

      **ii.**      <u>**Non-Compete Agreement – Breach**</u>

Having concluded that the non-compete agreement is valid and enforceable, the Court must now determine whether Plaintiff demonstrates a likelihood of success in proving that Defendant is in breach of the non-compete agreement.  The agreement prohibits Defendant from performing his duties at a company listed in Schedule A, which includes RedPrairie.  (V. Compl., Ex. A, Schedule A).  Defendant argues that he does not violate this provision because he will not be performing the

same duties at Red Prairie.

Pursuant to the agreement, "[d]uties" is defined as "those duties of the Employee while he/she was employed with the Company. This includes the selling and marketing of computer software solutions developed by the Company, which are specifically designed for management of warehouse and distribution centers."[2] (V. Compl., Ex. A). Defendant contends that he does not violate this provision because he will be selling different software products. Rather than selling WMS, Defendant asserts that his new position at RedPrairie focuses solely on the sale of labor management software products. (Ruderman Aff. ¶ 16; Conroy Aff. ¶ 8).

The Court disagrees that Defendant's "duties" will be different at RedPrairie. By Defendant's own admission, the Court concludes that part of his "duties" included selling labor management software. (Ruderman Aff., ¶ 16). Defendant stated: "I was primarily responsible for selling Manhattan Associates' warehouse management software products. My sales activity for Manhattan Associates resulted in approximately 30-35 warehouse management software license sales and only *one labor management software* license sale. That labor management software license sale occurred in September 2004." (*Id.*) (emphasis added). Based on Defendant's admission, the Court finds that the selling of labor management software must be included as one of the "duties" performed by Defendant as a Manhattan employee. Thus, the employment agreement precludes him

---

[2] As a threshold matter, the Court rejects Defendant's tenuous argument that a strict reading of the definitions for "[d]uties" restrict him from selling computer software solutions "developed by Manhattan," and not those products developed by RedPrairie. (Def.'s Br. at 10-11; Def.'s Supp. Br. at 12-13). Defendant misinterprets the second sentence of the definition of "[d]uties" as encompassing the outer limits of the definition. Because the sentence begins with the language "this includes," the Court finds that the "selling and marketing of computer software solutions developed by the Company" is merely an example of Defendant's duties, and does not necessarily exclude additional duties performed by Defendant. Thus, based on the plain reading of the definition of "[d]uties," Defendant's argument must fail.

from selling labor management software at RedPrairie. Accordingly, the Court concludes that Manhattan has demonstrated a likelihood of success in proving that Defendant will violate Section 2 of the non-compete agreement if he continues his employment with Red Prairie as a sales representative.[3]

### iii. The Employment Agreement

Manhattan moves for an injunction on provisions in the employment agreement. Specifically, Manhattan points to Paragraphs 3 and 4 which involve nondisclosure of trade secrets/confidential information and customer non-solicitation respectively.[4] However, Manhattan has not produced any evidence to suggest that Defendant is presently in breach of either provision.

---

[3] Defendant attempts to further distinguish his duties at RedPrairie from that of Manhattan by noting that his target customers and geographic focus would be different at RedPrairie. (Ruderman Aff. ¶¶ 17-18). For the reasons discussed above, the Court finds that Defendant violates the non-compete agreement by selling labor management software at RedPrairie. Defendant fails to convince this Court that a narrower construction of "duties" should be adopted, i.e., one specific to customer type and geographic area. Therefore, the Court rejects Defendant's argument that his conduct at RedPrairie will not violate the non-compete agreement simply because he will be focusing on different types customers beyond the borders of the northeastern region of the United States (the area he covered as a Manhattan employee). (*Id.*).

[4] The relevant portion of Paragraph 3 states: "Except in the performance of services for Company, Employee will hold in confidence and will not, without Company's prior written consent, use, reproduce, distribute, transmit, reverse engineer, decompile, disassemble, or transfer, directly or indirectly, in any form, or for any purpose, and Proprietary Information communicated or made available by Company to or received by Employee . . . ." (V. Compl., Ex. B, ¶ 3(b)).

Paragraph 4 provides: "During Employee's employment and the One Year Limitation Period, Employee will not, without Company's prior written consent, contact, solicit or attempt to solicit, on his or her own or another's behalf, any Customer with whom Employee had contact in the Two Year Restrictive Period with a view of offering, selling or licensing any program, product or service that is competitive with the Company Business." (*Id.* ¶ 4).

Manhattan has not demonstrated that Defendant presently disclosed any trade secret or confidential information. Nor has Manhattan shown that Defendant is soliciting its customers.

Rather, the evidence before the Court suggests that at this time, Defendant has not violated the employment agreement. Defendant offered credible testimony at the hearing that he has not disclosed any confidential information to RedPrairie, and has not solicited or attempted to solicit any of Manhattan's customers. RedPrairie also asserts that Defendant has not been asked to disclose any confidential information, or solicit any current or potential customers with whom he had contact while working at Manhattan. (Conroy Aff. ¶¶ 11-12). Significantly, Manhattan did not produce any non-speculative evidence to the contrary. Consequently, the Court finds that injunctive relief cannot be granted on the basis of this particular agreement at this stage of the proceedings.

### C. Irreparable Harm

In order to satisfy the second requirement for a preliminary injunction, Manhattan must "demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). In the context of non-competition agreements, irreparable injury may be shown if the former employee may "avail himself of sensitive product strategies both as to development and marketing," which may be of extreme value to the competitor. *Bausch & Lomb Inc. v. Smith*, 630 F. Supp. 262, 265 (W.D.N.Y. 1986). Moreover, irreparable injury has been found in instances where the movant "endeavored to cultivate relationships with its customers to develop important repeat business." *Alside Div. of Associated Materials Inc. v. Leclair*, 295 A.D.2d 873, 899 (N.Y. App. Div. 2002) (noting that plaintiff will lose business and suffer dilution of good will if defendant is unfairly permitted to use

11

plaintiff's confidential information). *Id.*

Here, Manhattan has demonstrated that Defendant is in possession of sensitive, confidential information. The record shows that in exchange for compensation in an amount typically greater than $95,000, Defendant held a position in Manhattan that allowed him to maintain relationships with approximately 100 current and potential Manhattan customers. (Waltz Aff. ¶ 4; Mitchell Aff. ¶ 4). In this capacity, Defendant obtained time-sensitive information regarding Manhattan's installed customer base, including potential weaknesses concerning dissatisfied customers and the needs of current customers who intend to purchase additional products and services. (Mitchell Aff. ¶ 5). Additionally, Defendant possesses confidential information concerning competitive strategies directed toward competitors such as RedPrairie. (Pl.'s Ex. List, Ex. 7). Should Defendant be permitted to utilize this information as an employee of a direct competitor of Manhattan, the Court finds that Manhattan may not only lose business, but suffer a dilution of good will and loss of trade. *See Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998) ("[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill"); *see also Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 596 (3d Cir. 2002) (noting that in a competitive industry, loss of market share may also constitute irreparable harm). Consequently, the Court concludes that Manhattan may suffer irreparable injury if injunctive relief is denied.

**D.     Balance of Equities and Public Interest**

With regard to the remaining prongs for the preliminary injunction standard, the Court concludes that Defendant will not suffer great harm as a result of the grant of a preliminary

injunction. For a period of less than six months, Defendant will simply be precluded from engaging in conduct that he had specifically negotiated and agreed to pursuant to an enforceable non-compete agreement – one that the Court has found to be reasonable in both time and scope. Conversely, Manhattan would suffer greater harm if Defendant is permitted to work for a direct competitor, armed with sensitive information he obtained while employed at Manhattan.

With regard to public interest, there is a cognizable interest in "safeguarding fair commercial practices and in protecting employers from theft of piracy of trade secrets, confidential information or . . . knowledge and technique in which the employer may be said to have a proprietary interest." *Campbell Soup Co. v. Desatnick*, 58 F. Supp. 2d 477, 489 (D.N.J. 1999). Moreover, the public has a great interest in upholding and enforcing freely negotiated reasonable contracts entered into between employees and their employers. As such, these factors further support the Court's conclusion that a preliminary injunction should be granted.

**IV.     CONCLUSION**

For the foregoing reasons, the Court grants Plaintiff's motion for a preliminary injunction on the basis of the non-competition agreement. Defendant is preliminarily enjoined from performing duties that he performed as a Manhattan employee, which include the selling of warehouse management software and labor management software, at RedPrairie. An appropriate form of Order accompanies this Memorandum Opinion.

Dated:      September 19, 2005

                                                  s/ Garrett E. Brown, Jr.
                                                 GARRETT E. BROWN, JR., U.S.D.J.